OPINION OF THE COURT
GIBBONS, Circuit Judge:
Air Line Pilots Association, International (ALPA) appeals from an unreported order of the District Court for the Eastern District of Pennsylvania, affirming a decision of the Bankruptcy Court denying ALPA’s application for appointment to the Committee of Unsecured Creditors of Altair Air *89 lines, Inc., debtor.[1] This court has jurisdiction under 28 U.S.C. § 1293(b). ALPA is the bargaining representative of pilots employed by the debtor. Unpaid wages are due those pilots under the terms of the collective bargaining agreement between ALPA and the debtor. The Bankruptcy Court and the District Court held that under the Bankruptcy Code ALPA was not a creditor and hence was not entitled to membership on the creditors’ committee. We reverse.
I.
On November 9, 1982, the debtor, a common carrier airline, filed a petition for reorganization under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 et seq. ALPA was the exclusive bargaining agent for eighty-eight pilots who on the date of filing were owed $676,120 in unpaid wages and benefits. This sum, in the aggregate, amounts to the second largest unsecured claim against the debtor. ALPA also has a claim for unpaid union dues withheld from pilot wages. On November 18,1982, ALPA filed an application for appointment to the Committee of Unsecured Creditors.[2] The debtor opposed the application, urging that ALPA is not a “creditor[] holding unsecured claims” within the meaning of 11 U.S.C. § 1102(a), because the unpaid wages were due to individual union members, and the union dues claim was for a small amount. The debtor also urged that ALPA would be a disruptive influence, since the best prospect for reorganization might be a merger or joint venture with a non-union common carrier.
The Bankruptcy Judge denied ALPA’s application, holding that it was not a creditor within the meaning of 11 U.S.C. § 101(9) and did not hold a claim within the meaning of 11 U.S.C. § 101(4). That court reasoned that the Bankruptcy Code, in contrast with the 1898 Bankruptcy Act, no longer included in the definition of creditor a “duly authorized agent, attorney, or proxy.” Thus ALPA could not act as an agent of its creditor members. As to the meaning of “claim”, the Bankruptcy Judge reasoned that the “right of payment” referred to in section 101(4) did not include ALPA’s rights under its collective bargaining contract.
The District Court affirmed, relying on dicta in Matter of Schatz Fed. Bearings Co., 5 B.R. 543, 546 (Bkrtcy.S.D.N.Y.1980) that while a union could serve on a Creditors Committee as a representative for unpaid pension benefit claims, it could not so serve on behalf of unpaid wage claims. The District Court did not rely on the Bankruptcy Court’s agency reasoning.
II.
Eligibility for service on a Creditors’ Committee depends upon status as a “creditor] holding unsecured claims.” 11 U.S.C. § 1102(a)(1). This section cross-references to the definitional provisions of the Code. 11 U.S.C. § 101. Section 101(9) defines a creditor as
(A) [an] entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor.
An “entity” is defined as “a person, estate, trust, [or] governmental unit.” 11 U.S.C. § 101(14). A “person” is defined as an “individual, partnership, [or] corporation, ...11 U.S.C. § 101(30). Finally a “corporation” includes an “unincorporated company or association.” 11 U.S.C. § 101(8)(a)(iv).
*90 ALPA is an unincorporated association, 29 U.S.C. § 185(b). Thus it is an entity within the meaning of 11 U.S.C. § 101(9). The remaining question is whether it “has a claim against the debtor.” A “claim” is a
(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unma-tured, disputed, undisputed, secured or unsecured.
11 U.S.C. § 101(4). The existence of a “right to payment” is determined, obviously, by the law governing the transaction between the alleged claimant and the debt- or. In the case of a collective bargaining agreement in or affecting interstate commerce, that law is federal common law. 29 U.S.C. § 185(a). Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). Under that law ALPA may bring suits to enforce the terms of a collective bargaining agreement, including suits to recover unpaid wages or vacation pay. UAW v. Hoosier Cardinal Corp., 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966); New Mexico Dist. Council v. Mayhew Co., 664 F.2d 215, 218-19 (8th Cir.1981).
The debtor urges that while federal common law permits a union to sue to enforce a collective bargaining agreement, that law does not authorize the union to “collect” the wages, but only to cause them to be passed through to its members. That distinction is entirely too metaphysical to serve as a guide for construction of the Bankruptcy Code.[3] Congress has recognized estates and trusts as persons, and thus as entities having claims against debtors. The representative capacity of such fiduciaries is- essentially no different, for purposes of participation in a Creditors’ Committee, than the representative capacity, under federal common law, of a labor organization.
The debtor also urges that ALPA has no claim because the debtor did not “breach” the collective bargaining agreement. Rather, it contends, the failure to pay in accordance with the terms of that agreement resulted, upon the filing of its Chapter 11 petition, by operation of law. This argument is frivolous. The Bankruptcy Code suspends payments to unsecured creditors upon the filing of a petition, but recognizes that they have claims. In this respect ALPA’s claim is no different that of any unpaid contract creditor. The wages which should have been paid are unpaid, just as fuel bills and bank loans are unpaid.
Nor are we impressed by the policy argument relied on by the debtor in support of the Bankruptcy Judge’s construction of the governing statutory provisions. Undoubtedly ALPA’s members may be interested in a plan of reorganization which preserves both their jobs and their collective bargaining agreement, while other creditors may be interested in liquidation, or a reorganization involving a merger with a non-union airline. Such conflicts of interest are not unusual in reorganizations. Materialman creditors, for example, may sometimes prefer to forego full payment for past sales in hopes of preserving a customer, while lenders may prefer liquidation and prompt payment. Section 1103(c)(2) contemplates that the Creditors’ Committee may “investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor’s business, and the desirability of the continuance of such business . ... ” (emphasis supplied). There is no reason why the voice of the collective bargaining representative should be the one claimant voice excluded from the performance of that statutory role. The Bankruptcy Code has been said to be “in tension with our national labor policy, as expressed in the National Labor Relations Act.” In re Bil- *91 disco, 682 F.2d 72, 77-8 (3d Cir.1982), cert. granted, -— U.S.-, 103 S.Ct. 784, 74 L.Ed.2d 992 (1983). But that tension does not suggest that collective bargaining representatives should have no role in the reorganization process. Quite the contrary; resolution of the tension suggests that those representatives should be heard in appropriate cases. Clearly a case in which unpaid sums due under a collective bargaining agreement amount to the second largest unsecured claim against the debtor’s estate is an appropriate case.
Because we hold that a collective bargaining representative has a “right to payment” of unpaid wages within the meaning of 11 U.S.C. § 101(4), and thus is a creditor within the meaning of 11 U.S.C. § 1102(aXl), we need not address ALPA’s alternative argument that in any event 11 U.S.C. § 1102(c) authorizes its designation as a representative of the employee claimants.
III.
The judgment affirming the decision of the Bankruptcy Court will be reversed, and the case will be remanded to the District Court for the entry of an order directing the Bankruptcy Court to grant ALPA’s application for appointment to the Committee of Unsecured Creditors.

. The Bankruptcy Court opinion is reported. 25 B.R. 223 (Bkrtcy.E.D.Pa.1982).

. ALPA is a member of the Creditors’ Committee in Braniff Airways, Inc., Debtor No. 48,-00368, 369F (N.D.Texas). Labor organizations are sitting on Creditors’ Committees in a number of other bankruptcy proceedings. MFX Inc., No. 82-04944K (E.D.Pa.); Fowler & Williams, No. 5-81-0642G (M.D.Pa.); Spector Red Ball, Inc., No. 5-82-80329T (W.D.Texas); Hemingway Transport, Inc., No. 82-01340,341JG (D.Mass.); Boss Lineo Lines, Inc., No. 82-10182M (W.D.N.Y.). See also Matter of Liberal Market, Inc., 11 B.R. 742, 744 (Bkrtcy.S.D. Ohio 1981) (ordering union representation on Creditors’ Committee without discussion of issue).

. To the extent that dicta in Matter of Schatz Federal Bearings Co., Inc., 5 B.R. 543, 545 (Bkrtcy.S.D.N.Y.1980) suggests otherwise we decline to follow it.